UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE D. INGRAM,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No. 1:24-cv-00033-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF**<br><br>**(Doc 12, 14)** |

**I.**     **Introduction**

Plaintiff Christine D. Ingram appeals the decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]  Because substantial evidence and applicable law support the ALJ's decision, the appeal will be denied.

**II.**     **Factual and Procedural Background**

On June 25, 2021, Plaintiff applied for SSI.  The application was denied initially on December 17, 2021, and on reconsideration on April 11, 2022.  AR 103–07, 111–16.  The ALJ held a hearing on February 22, 2023.  AR 35–60.  On April 18, 2023, the ALJ issued an unfavorable decision.  AR 15–34.  The Appeals Council denied review on November 22, 2023 (AR 1–7) and this appeal followed.

**III.**     **The Disability Standard**

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits.  Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is that which could lead reasonable minds to accept a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 3, 5.

1

preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education

and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of June 25, 2021. AR 20. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, major depressive disorder and general anxiety disorder. AR 20. The ALJ also determined at step two that Plaintiff's hypothyroidism, hypertension, constipation, insomnia, shoulder arthritis, arthritis of the hands, obesity, and degenerative changes of the cervical spine were not severe. AR 20–21.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22–23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> She can occasionally stoop, crouch or crawl and never climb ladders ropes or scaffolds. She should have no exposure to heights or operation of dangerous moving machinery. She can perform simple, routine and repetitive tasks.

AR 23–29.

At step four the ALJ concluded that Plaintiff had no past relevant work. AR 29. At step five, in reliance on the VE's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: Housekeeping Cleaner, Sample Distributor, and Silver Wrapper. AR 30. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the application date of June 25, 2021. AR 30.

### V. Issues Presented

Plaintiff asserts that the ALJ failed to properly address her hand impairment, erred in finding it non-severe, and/or failed to develop the record concerning the same.

#### A. Applicable Law

At step two, the ALJ must determine if the claimant has a medically severe impairment or

combination thereof. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: 1- physical functions such as walking, standing, sitting, lifting, and carrying; 2- capacities for seeing, hearing, and speaking; 3- understanding, carrying out, and remembering simple instructions; 4- use of judgment; 5- responding appropriately to supervision, co-workers, and usual work situations; and 6- dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

Despite the meaning of the word "severe" in common parlance, the step-two severity threshold is not high. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290. "Step two, then, is a de minimis screening device [used] to dispose of groundless claims[.]" Smolen, 80 F.3d at 1290.

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R.

§ 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ's duty to further develop the record is triggered when the evidence is ambiguous or inadequate for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

### B. Analysis

Plaintiff's lone argument header reads "A FAILURE TO ASSESS HAND" and spans three pages of text.

On the first page Plaintiff recites the ALJ's findings that her shoulder and hand impairments were not severe and asserts that the ALJ made that finding by acting as her own expert. MSJ at 9 (Doc. 12). Plaintiff explains that she underwent a hand x-ray on June 8, 2022, which showed bilateral asymmetric degenerative arthritis distal interphalangeal joints of both hands and interphalangeal joints of both thumbs. AR 568. The hand x-ray post-dated the agency consultants' review and the consultative examination. Thus, Plaintiff surmises that ALJ's determination was based on her own independent review of the x-ray findings. Plaintiff emphasizes caselaw explaining that the ALJ must not succumb to the temptation to play doctor and make independent medical findings. *Id* at 10.

Yet the ALJ did not purport to independently interpret the x-ray imaging, radiology report, or form any conclusions about the functional implications of the same. Rather, the ALJ simply

recited the x-ray findings and explained that "there was no evidence of any treatment for the condition in the medical record, as her physical therapy sessions did not address her hands. Additionally, her hand grip testing did not indicate any significant deficits with her grip strength." AR 21 (citing Ex. B5F/2, B7F/3). Plaintiff challenges these findings in the final page of her brief, addressed in more detail below.

Plaintiff then block quotes her cervical spine x-ray findings emphasizing in bold the "moderate to marked disc space narrowing at C5-6," though Plaintiff does not expand on this point or connect the cervical spine x-ray findings back to her hands. *Id.* Plaintiff's intended point might be that severe cervical stenosis often manifests in upper extremity pain, strength deficits, and sensory disturbances. However, the ALJ specifically noted that there was no evidence of radiculopathy, that Plaintiff's upper extremity motor strength and sensation were normal at the consultative examination, and that Plaintiff had no treatment for her cervical spine reflected in the record. AR 21. Thus, the ALJ found the cervical spine impairment not severe. *Id.* Here, Plaintiff does not challenge the ALJ's findings concerning her cervical spine, and thus any such issue is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (stating a reviewing court ordinarily will not consider an issue that a claimant fails to argue "with any specificity" in the opening brief).

Plaintiff then provides one page of quotations and string citations concerning the ALJ's duty to develop the record, especially in the case of unrepresented and mentally impaired claimants. Plaintiff asserts that the ALJ failed in that respect. *Id.* at 10. Plaintiff explains that "[t]he ALJ could have subpoenaed the physicians; submitted questions to physicians; continued the hearing; or kept the record open . . . The ALJ could have ordered a consultative examination."[2] Yet Plaintiff does not provide any suggestion as to which physicians should have been subpoenaed, what

---

[2] *Id.* (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998))

questions they should have been asked, for what purpose the record would have been kept open, or what additional evidence would have been submitted had the ALJ kept it open. In fact, the ALJ had already ordered a consultative examination which was conducted on October 14, 2021, and which included a detailed assessment of her hands including grip strength, sensation, and range of motion--the examiner opined she had no manipulative limitations. AR 472–74.

Further, there is no merit to Plaintiff's suggestion that the ALJ should have kept the record open or subpoenaed additional records. As Defendant explains in the response brief, which Plaintiff did not challenge in reply, "Plaintiff obtained counsel when appealing the ALJ's decision to the Appeals Council (Tr. 8, 13), but the only additional record she submitted when represented upon appeal was a treating source statement from Kara Sigler, FNP, which did not pertain to the relevant period or refer to [the] hand impairment (Tr. 2, 14)." Resp. at 6. Additionally, Plaintiff does not challenge the Appeals Council's decision not to admit FNP Sigler's opinion, and does not contend it is relevant to her claim of error here.

Neither has counsel has submitted new evidence to the Court to determine its materiality, nor whether the newly submitted evidence would warrant remand for consideration of the same. *See Mayes*, 276 F.3d at 461–62 (explaining the standard for a remand for new evidence under sentence six of 42 U.S.C. § 405(g)). In sum, Plaintiff faults the ALJ for not seeking updated evidence concerning her hands, but counsel has provided no such records years after the fact, which might suggest they do not exist.

In the final page of the opening brief, Plaintiff argues as follows:

The ALJ noted the June 2022 x-ray showing; however, the ALJ rejects any limitations stating that she has not had any treatment for this condition and her hand grip testing shows no deficits. (Exhibit B5F/2, B7F/3). AR 21 5F/2 is the consultative examine in October 2021, eight months earlier, and showed decreasing grip with each test. "Hand grip "Right; 60/45/45 Left: 40/40/36." AR 472. 7F/3 is a physical therapy November 4, 2021, where Ingram was being evaluated for right shoulder pain, and low back pain. AR 480. In that report, the focus was "potential pathology related to impingement or rotator cuff/biceps tendon" and showed

> reduced range of motion in the hips 4/5 abduction and 4/5 flexion with limited range of motion in the lumbar spine and decreased strength - 4/5 and range of motion in the right shoulder. AR 480. Ingrams hands were not the focus of that appointment and it too is seven months prior to her x-ray.
>
> As to the ALJ's rationale that Ingram has had no treatment for her hands, the x-ray was only in June 2022 and was in a fax from Ingram rather than records from the facility. The ALJ did not order updated records and Ingram provided the xrays of her hands in June 2022 and cervical spine in July 2022, herself. The ALJ has failed in her duty to order the complete record and cannot use this as a reason to reject Ingram's hand limitations when it was her duty to order it. Ingram did the best she could and it was up to the ALJ to be certain the record was complete and Ingram was given an opportunity to be heard on the entirety of her impairments. Reversal is warranted for the ALJ's failure to properly develop the record and assess her hand limitations for this mentally impaired and unrepresented claimant.

Here, Plaintiff disputes the ALJ's finding concerning normal grip strength. Plaintiff's values at the consultative examination were 60/45/45 on the right and 40/40/36 on the left (AR 472), compared to a normal grip strength in healthy 50-59 year old females of 28 kg (61.7 pounds) on the right and 26 kg (57.3 pounds) on the left.[3] Nevertheless, despite these marginally reduced grip strength readings, Dr. Sharma opined Plaintiff had no manipulative limitations (AR 474) which was based on her own examination of Plaintiff's hands, including the grip strength readings. Dr. Sharma further noted full range of motion in the fingers, hands and wrists. AR 473. It is unlikely that Dr. Sharma's opinion would have been altered by the fact that Plaintiff was subsequently diagnosed with degenerative arthritis in her hands based on x-ray imaging taken eight months later.

Likely in response to the ALJ's observation that "her physical therapy sessions did not address her hands," Plaintiff explains that these physical therapy sessions were to address shoulder pain and low back pain, not hand pain (AR 480). Indeed, the ALJ's point was not persuasive. The fact that Plaintiff's physical therapy sessions addressed other body parts does not undermine the possibility of hand limitations. Nevertheless, the point was not necessary to sustain the ALJ's decision.

---

[3] *See* https://www.sralab.org/rehabilitation-measures/hand-held-dynamometer-grip-strength

As to the lack of treatment for her hands, Plaintiff observes that the x-ray was only in June 2022, suggesting there was not much time to pursue such treatment. Nevertheless, obtaining a corroborative x-ray is not necessarily a precondition to receiving treatment for arthritic pain. Further, the administrative hearing was roughly eight months later on February 22, 2023 (AR 35-60), by which time it would not be unreasonable for the ALJ to expect Plaintiff to have pursued further treatment or workup for hand arthritis if it was significantly limiting her functioning.

Plaintiff emphasizes that the x-ray results came from Plaintiff directly, not from the facility, and the ALJ did not follow up to "order updated records."   Again, neither she nor counsel produced any such records to the Appeals Council, nor presented them to the Court on appeal. The possibility that some updated records might exist is not a basis for remand. Further, Plaintiff does not contend in so many words that any such records do in fact exist, or that she did in fact pursue any additional treatment or follow up. The claim of error is thus purely speculative and states no basis for remand.

Plaintiff emphasizes the following testimony in her reply brief which she contends refutes a non-severity finding, as it was not clearly established that her hand impairment was only a slight abnormality that has no more than a minimal effect on her ability to work:

> A Oh, yeah, I just -- one thing that we didn't discuss was my hands.
> Q Uh-huh.
> A When he was talking about picking vegetables and I have arthritis in my hands, so I didn't know if he knew that.
> Q Well, you didn't mention it, so tell me about it.
> A Yeah, it should be in my file because I have X-rays on that too, but I have arthritis –
> Q Okay.
> A -- like when it's cold, like right now especially, my hand'll freeze up and they -- they    always have a tingle to them, even when they're not cold and they get cold real easily, even when it's warm outside. But when they are cold, they freeze and so like I can't hold scissors properly to use or, you know, I have to use a straight cutter or something to open something and so they're I think they're not gonna get better, but I do have cream, medicated cream from the doctor to use.
> Q Okay. Do you use it?
> A I've used it, and I didn't notice any difference and it really stinks bad and so I - honestly, I have not been using it.

> Q All right. How else you know, does it affect your daily activities?
> A Mostly like when it's cold. When it's cold, I'd say, or if I have to try to do something like -- you know, like cutting something and scissors, I can't use scissors. They cramp up and, you know, they'll freeze up.
> Q Okay.
> A Like I used to be able to cut my own hair and it's like, you know, I can't cut my own hair, but I think it might be just in the beginning stages and I do try to exercise them, you know, to try to make 'em feel better, but I just thought that, you know, how am I gonna pick fruit. I'm sorry. It would be hard.
> Q I don't that person actually picks fruit, but I -- I -- we can ask.
> A Nc, it's okay. understand. I don't mean to make any trouble.

AR 59–60

This testimony is not suggestive of significant limitations, particularly given the statements suggesting the arthritic symptoms were mostly triggered by cold, and that they were in the early stages. Counsel also emphasizes that Plaintiff was clearly incapable of formulating a question about her hand limitations to the Vocational Expert, and that the ALJ was of no assistance, which was particularly problematic given the importance of hand dexterity to the jobs identified by the VE. Reply at 3, 6–7 (Doc. 15).

However, it is not impactful that neither Plaintiff nor the ALJ inquired of the VE concerning the impact of hand limitations on the available jobs as the ALJ <u>found no such hand limitations,</u> which was a supported finding.

In sum, Plaintiff believes an expert should have reviewed the hand x-ray showing degenerative arthritis dated June 8, 2022 (AR 568), and opined on any limitations resulting from the condition. However, the ALJ had already ordered a consultative physical examination by Dr. Sharma eight months earlier on October 14, 2021, who conducted a detailed examination of her hands -- among other things-- including grip strength and range of motion of her fingers and wrists and opined she had no manipulative limitations. AR 472–74. That examination is more probative of functionality than x-ray imaging.

Further, there is no evidence of any significant exacerbation of the degenerative arthritic

condition during the eight months between the consultative examination and the x-ray. Thus, it is highly unlikely that the condition of Plaintiff's hands was materially different during the October 14, 2021, consultative exam.

Therefore, the ALJ's findings concerning Plaintiff's non-severe hand impairment and no manipulative limitations was supported by substantial evidence, namely Dr. Sharma's consultative examination findings, Dr. Sharma's associated functional opinion, and the lack of treatment for the condition.

**VII.   Conclusion and Order**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 12) is **denied**.
2. Defendant's cross motion (Doc. 14) is **granted.**
3. The Commissioner's decision is **affirmed**.
4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Christine D. Ingram.

IT IS SO ORDERED.

Dated:   **December 6, 2024**               **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE